OPINION
Appellant, Angela Cowgill,[1] appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor daughter and son, Holly and Nicholas Barker, to Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
Appellant is the biological mother of both Holly, born December 30, 1993, and Nicholas, born September 22, 1995. On November 4, 1997, BCCSB received a referral regarding the alleged verbal and physical abuse of the children. Also, the children were reportedly dirty, the house was a mess, and they had an ongoing problem with head lice. Finally, the referral alleged that appellant was not careful with attending to Nicholas' breathing treatments for his asthma.
BCCSB continued to have involvement in the case. Appellant was ordered to attend Development of Living Skills classes. Appellant's attendance was reported as sporadic with minimal progress. Further, BCCSB continued to receive reports that the children were being poorly cared for. On July 20, 1998, appellant requested that the children be allowed to reside with Ramona Wagers, the children's baby-sitter, for 30 days. When appellant left the children with Wagers, Holly was suffering from ringworm and Nicholas still required breathing treatments for his asthma. Appellant provided Wagers with an inadequate supply of medication for each child.
On August 7, 1998, a complaint was filed by BCCSB alleging that Holly and Nicholas were neglected and dependent children. An adjudication hearing was held on September 14, 1998 in which all parties stipulated that Holly and Nicholas were neglected and dependent children. At the hearing, Wagers' temporary custody of the children was continued. Also, the case plan filed by BCCSB was adopted and made an order of the court.
During this period, BCCSB's stated goal was reunification of the children with appellant. The case plan required appellant to undergo a psychiatric evaluation, obtain stable housing, and maintain employment.
BCCSB filed a motion for permanent custody of Holly and Nicholas on July 20, 2000. Hearings on this motion were conducted on January 5, March 6, and March 13, 2001. On September 7, 2001, the trial court granted permanent custody of Holly and Nicholas to BCCSB. Appellant appeals this decision, raising the following assignment of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT ANGELA COWGILL BY FINDING THAT THE AWARD OF PERMANENT CUSTODY OF NICHOLAS AND HOLLY BARKER TO THE BCCSB WAS IN THE BEST INTERESTS OF THE CHILDREN.
Appellant contends that the children are strongly bonded with her. She also contends that she has been cooperative and completed the case plan services. Thus, she believes that permanent custody should not be awarded to BCCSB and it is against the children's best interest.
Natural parents have a constitutionally-protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. Due process requires the state to prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that "the measure or degree of proof * * * produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
A reviewing court will reverse a finding of clear and convincing evidence only if there is a sufficient conflict in the evidence presented. Id. at 479. The trial court is required to make specific statutory findings when deciding a permanent custody case. See In reWilliam S., 75 Ohio St.3d 95, 1996-Ohio-182. The reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. Id.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In order to grant permanent custody to a state agency, the trial court must also find by clear and convincing evidence that one of the factors enumerated in R.C. 2151.414 (B)(1) applies. These include in pertinent part, "[t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414 (B)(1)(d). Holly and Nicholas have been in the custody of BCCSB for more than 12 months within a consecutive 22-month period.
When determining whether it would be in the best interest of the child to grant permanent custody of the child to an agency, a juvenile court should consider all relevant factors enumerated in R.C. 2151.414(D), which include, but are not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
We find that the trial court's determination that it is in the best interest of Holly and Nicholas to be permanently placed in the custody of BCCSB is supported by clear and convincing evidence.
During the trial there was testimony that appellant did not have food in her cupboards. Also, appellant testified that she had worked at approximately ten jobs in the last two years and had faced eviction twice and had her water turned off twice. The most recent water cut-off occurred during March of 2001. Appellant also testified that she was renting to own a computer and a bedroom set, even though she did not have the money to pay her utility bills.
Appellant did complete her case plan. However, appellant has not followed through in obtaining services that could aid her such as Social Security, consumer credit counseling, and case management. During the trial, appellant proffered a completed form as proof that she planned on applying for assistance with her utility bills, but at a later hearing admitted that she never turned in the form.
Appellant admitted that Nicholas was so severely bitten by fleas during one of his visits that she took him to the emergency room for medical treatment. She then stated that the line in the emergency room was too long so she brought him home. Evidence indicated that the children did not know how to brush their teeth nor had they been to a dentist until they were placed in foster care. During their first dentist visit, Holly had ten cavities and Nicholas had eight.
Although appellant exhibited good parenting skills during one incident in a caseworker's presence, appellant's fiancé stated that he had to pull appellant away from Holly one time so that the discipline would not become severe. Appellant admitted to a caseworker that she was not as attached to Holly as she was to Nicholas.
Jennifer Lazonda, the ongoing caseworker, testified at the hearing. She stated that there has been an ongoing roach problem as well as a flea and mice problem in appellant's home. Lazonda also testified that the children have returned from visits with their mother without brushed teeth, without having been bathed and having dirty clothes.
Julie Melanson, Holly's therapist, testified that Holly suffers from attachment issues and requires a permanent placement and consistency. Melanson stated that Holly's behavior problems are related to not knowing where she will permanently live. Finally, Melanson testified that Holly has begun to bond with her foster mother.
Steve Thornton, Nicholas' therapist, testified at the hearing as well. He stated that Nicholas had isolation issues, mood swings, anger, tantrums and irritability. Nicholas also was not interacting with his peers at school. Thornton further testified that Nicholas was in need of a "stable, predictive environment" and that Nicholas was bonded with his foster parents.
Appellant submitted to a Children's Diagnostic Center evaluation as required by her case plan. During this session conducted by Dr. Lee, appellant admitted to needing help with her parenting skills. She was also diagnosed as suffering from depression and anxiety. Dr. Lee testified that appellant's depression and anxiety must be controlled before parenting issues could be adequately addressed.
Sharron Rockenfelder of Catholic Social Services was assigned as appellant's therapist. Appellant did attend 36 of 39 scheduled counseling sessions and was prescribed medication for her depression and anxiety disorders. However, Rockenfelder testified that she was concerned that appellant was not consistent in taking her medication. Rockenfelder related that while appellant was on medication, her condition would improve, but when appellant went off the medication, her depression would increase. Rockenfelder described it as a cycle. Finally, Rockenfelder testified that appellant has not learned the importance of taking her medicine.
Based on the factors in R.C. 2151.414(D) and all relevant evidence in the record, we find that there was clear and convincing evidence before the trial court that it was in the best interest of Holly and Nicholas for permanent custody to be granted to BCCSB. Although appellant completed her case plan, she has not shown the consistency or the ability to use the skills she learned. She still makes poor financial decisions, has difficulty in consistently disciplining the children, and is inconsistent with taking her medicine. Over the past two and a half years, appellant has shown a lack of stability and consistency. Furthermore, the children have begun to form bonds with their foster family and testimony proffered during the hearings stated that the foster family wishes to adopt them. Finally, the caseworker strongly recommends that the children be placed in a permanent placement.
Based on all the evidence in the record, we find that the trial court did not err in granting BCCSB's motion for permanent custody. Appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.
[1] The children's father, Larry Barker, who had been properly and timely served and was represented by counsel, did not personally appear until 3:40 on the final day of the permanent custody hearing. He has not appealed the trial court's decision in this matter.